We are now ready to hear argument in the case of Bost v. Illinois State Board of Elections. Ms. Frost. Good morning, your honors. May it please the court. Just one month before the 2022 primaries, a Republican congressional candidate and voters filed a complaint threatening to severely upend the ways that mail ballots are counted in Illinois. If the relief that they sought had been the law in 2020, as their complaint acknowledged, hundreds of thousands of ballots would have been rejected. The Democratic Party of Illinois immediately moved to intervene to protect its own interests and its resources and its members' interests in having their votes count. Either of those interests entitled the Democratic Party to intervention as of right, or at least to permissive intervention. The argument you are making, the argument you've just articulated, is that anyone that has standing to file an independent lawsuit can intervene as of right in any other lawsuit about the same issue. Is there some precedent that supports that? Usually the rule is articulated as one can intervene when the original parties are not adequately representing the interest. But you've taken a much broader position, and I wonder whether there's precedent for it. Your honor, that is not our position. We understand that… It's exactly what you just said on your feet. So, then perhaps I did not articulate the nuances of it. You said my client has standing, and therefore it can intervene. No, your honor. What I said is that my client was put in a position where if the remedy that the plaintiffs were seeking was entered… It affects your client's legal interest. That is to say, it has standing. What you want to do is cut out of the analysis the question whether the parties are adequately representing the interest. Here, whether the defendants are adequately defending the statute. You think that should be cut out of the legal analysis, and I wonder whether you have precedent for that. We do not have precedent for that, your honor, and that is not… We do not think it should be cut out of the analysis. We think the district court should follow the analysis that this circuit has set out repeatedly, including by looking at the interest that is adequate enough to give a right to intervene under the interest prong, and then compare that interest closely to the interest represented by the parties already in the case. No, look, I thought I'm being perfectly clear. What role do you think it plays that the defendants are vigorously defending the validity of this statute? Your honor, we actually would dispute that they're vigorously defending it. Would you answer my question? I mean, that matters, however, it… In your analysis, what role does that play? Under the analysis that has been articulated by this court, that comes into play… I did not ask you to parrot somebody else. I asked you to articulate the position of your client in this court. Could you do that, please? Yeah, and the position of our client is that there is a risk that the state board, even if they are defending the law… No, I give up. I am asking a legal question, and you come back to the facts of this case. I'm done. I'm done. You're refusing to answer my question. Your honor, I apologize. I'm trying to answer the question in the way that we understand the test. I think that a vigorous defense doesn't matter when the party's interests do not align. If there is a risk that the interest of the party that is seeking to intervene will not be adequately represented. In this case, there is that risk, and it was immediately… And what precedent do you have to support that? That at least articulates a position. That is driftless. That is Planned Parenthood, we call. For the purposes of the motion to dismiss, how do the intervenors' interests diverge from those of the election board? If the court declines to dismiss, for instance, could the Democratic Party seek again to intervene? It's possible. The court did not say whether it was denying the motion to intervene with or without prejudice. Obviously, the party sought intervention because it would like party status on an appeal. I would also point out that there was a difference in our motion to dismiss and the state's motion to dismiss. Number one is it was filed actually well before the state's motion to dismiss. And that's one of the places where our interests really do diverge. The ballot receipt deadline imposes duties on the state board that kick in on election day. At that point, the question is, are they going to continue counting ballots that are coming in with the postmarks? But the rule actually imposes burdens on the party far before that, as it has to decide how to allocate its resources. And so there were two immediately obvious divisions in the way that we were approaching this case. Number one, the Democratic Party of Illinois was really pushing to get this case resolved as quickly as possible, while the state party and the plaintiffs, frankly, kept seeking and getting extensions. That in and of itself is impeding our resources' interests. And second, in our motion to dismiss, we made an argument that the state did not. And that is that the congressman does not have standing based on his mere candidacy. And that's important because the second count in their complaint is based entirely on that standing. That was not an argument that the state board made. Ms. Frost. I'm sorry. Go ahead. Go ahead, Judge Roper. Oh, dear. Go ahead. Does the state board of elections spend money on educating voters about when they need to cast ballots or when the ballots need to arrive to be counted? In other words, is there any overlap at all in interests on the allocation of resources? I didn't see any claimed overlap on that interest, but I wanted to kind of verify the point. Yeah, there was nothing in the record to that. And obviously, they don't spend the Democratic Party of Illinois' resources. No, no, no. It's actually quite important how we choose to spend our resources if we spend all the way down in advance of Election Day on other get out the vote efforts. If we are deciding to tell longtime male voters that you need to actually get your ballot in well before. These are all communications that need to start happening early. They need to start happening often. And I think that as a practical matter, political parties reach voters that the state simply doesn't because they have a partisan interest, obviously, in turning out voters that the state doesn't. This is something that actually the Fifth Circuit, which does apply an adequacy of representation requirement to motions to intervene whenever the government is an existing party, something the circuit has never done, reversed a denial of a motion by the Republican Party to intervene. Recently, pointing out, among other things, that the state obviously can't vindicate any partisan interest while acting in good faith and noting that that was an indication that their interest could diverge. Ms. Frost, assume we agree with you and that looking at adequacy of representation, our default rule applies. And the rule would be satisfied if you could show that the representation of your interest may be inadequate. How do you meet that standard? So we made that standard. I think it's a very practical look at the interest. And I think on its face, obviously, our interest in our electoral prospects and efficient use of our resources is not shared by the state board. But that's really a divergence of interest, which goes to one of the other prongs of intervention. I'm focusing on the adequacy prong. It can't be that the diversion of interests satisfies both the interest prong and the adequacy, because otherwise you wouldn't have the adequacy standard. So what is it that you have argued or is in the record that would satisfy this may be inadequate test? Frankly, Your Honor, I think the speed right away. That fact that we are really pushing, we need to get this done, and the state board doesn't have the same sense of urgency. I'll retain the last 15 seconds for rebuttal. Certainly, counsel. Mr. Lee. Thank you, Your Honor, and good morning. Eric Lee on behalf of the appellees, and may it please the court. May I start you off? I'm sorry? May I start you off? Yes. Okay. In assessing the adequacy of representation, where did the district court consider the interest of the proposed intervener in resource allocation? Look, under Driftless, the court must take all of the intervener's interests into account in making the assessment, right? Right. The district court here appears to have repeated the mistake of the district court in Driftless, unless I'm off the wall. That's correct, Your Honor. That I'm off the wall? I'm sorry. That the district court has to consider for the adequacy of representation, a discerning comparison of all interests between the intervener party and the representative party. And I respectfully submit that the district court did so here. It had a lengthy opinion with respect to the interest prong under Rule 24A that talked about both interests that the Democratic Party of Illinois has proposed here. And then it went on to analyze those interests and ask whether the overall goal between the two parties are the same. And here, I'm sorry, the overall goals are not to preserve resources, but rather to preserve absentee Democratic ballots that vote by mail. But I think that's the problem. All right. The court looked at the overall goal, but it seems to me did exactly what we said in Driftless that the court shouldn't do, that it looked at it from a broad goal. And that they have the same goal of wanting to see you lose the case and wanting to succeed on this. I don't see anywhere where the court focused on the goal of the proposed interveners of worrying about their resources and where they would put their resources, which the court clearly articulated as an interest earlier in the opinion, but didn't engage in the analysis with that interest. Right. And I believe that this court in Driftless talked about how the district court there generalized the interest too broadly in that both parties wanted the case dismissed. And the district court here said that the interest goes beyond that and that both parties, yes, they do want the case dismissed. They opposed plaintiff's relief. But that simply doesn't mean that it ends there. It means that the interest itself, the overall goals of this litigation, was not to preserve the Democratic Party's resources. That's not at issue in this case. The issue in this case is the ballot receipt deadline, which allows 14 days of receipt of absentee ballots. Go ahead. No, no, go ahead. Go ahead. You follow up. The court previously identified the resource issue with respect to the Democratic Party as an interest. And then when it goes on to the same goal, it ignores that interest. Why wasn't that in error? Your Honor, I don't believe that was an error because this court here, not in Driftless but in Solid Waste Agency versus U.S. Army Corps of Engineers, discussed the interest there, which were several environmental groups and citizens that were concerned about a landfill that was coming in. They submitted several more narrow, specific interests in that case, such as preservation of property values, increased municipal costs, and the increase in noxious odors that would result from the landfill. This court did not analyze each interest one by one and said this interest is adequately represented, but this interest is not adequately represented. Rather, it looked at the overall goals of the two parties, and there they were closely aligned, that the goals between the citizens group were closely aligned with the U.S. Army Corps of Engineers, and that both wanted the permit denied for the landfill and uphold the Clean Water Act. And that's similar to here, because even though the Democratic Party has more specific interests and more narrow interests, such as preservation of the resources and get-out-the-vote efforts, that narrow interest doesn't necessarily mean that it's materially different from the parties in this case. Look, the district court sought to distinguish Driftless by saying that the proposed intervener doesn't have a property interest in votes that are cast after Election Day. First, we have got to clarify that none of the votes at issue were cast after Election Day. Second, and I guess more importantly, what is at stake for the Democratic Party here is how it spends its resources in the next election and the election after that. The intervener is not concerned with a single election, but how it will have to divert resources in all elections. The court seems to have misunderstood the intervener's interest in allocation of resources. Am I wrong? It's okay if I am. I do respectfully disagree, because the court talked about both interests at length under the separate interest prong, but not with respect to the adequacy of representation prong. But I would respectfully submit that the court didn't have to, based on this court's precedent and how it doesn't have to analyze each and every interest individually in isolation and in a vacuum. It looks at the overall goal, and if the overall goals are closely aligned, then the presumption applies. But we made clear in Driftless that the overall goal, quote, requires a more discriminating comparison of the absentee's interest and the interest of the existing parties. And I don't know how you could say, ignoring the Democratic Party's interest in how it spends its resources, that we could just put that aside and how that would require a discriminating, how that would meet the requirement of a discriminating comparison. And I would respectfully submit that the resources interest itself is not the overall goal of the Democratic Party intervening here. The overall goal. But the court found that that, in the earlier part of the analysis, that that was a separate interest of the Democratic Party. Right. And it satisfied Rule 24a's interest prong and impairment. But the intervener must satisfy also the adequacy of representation prong, and it's a different analysis, as you described, that it has to be a discerning comparison between the interest of the intervener and the representative party. You know, you've argued that the proposed interveners haven't identified any different arguments that they would raise in the district court, different from the arguments of the Board of Elections. But, of course, our cases do not require different arguments. They require different interests. What support do you have for using this as a factor? And once the motion to dismiss is resolved, might the intervener then have different arguments? Yes, Your Honor. It wasn't a case before this court, but it was a Southern District of Indiana case in the circuit. It talked about how presenting different arguments for the interveners does not presume that the adequacy is not represented, it's not adequately represented. And that case was the common cause, Indiana versus Lawson. And the interveners there said that they would propose different arguments in the motion to dismiss case. But Southern District of Indiana isn't binding on us, and it seems to contradict what we have said. Yes, it does. I don't think that is your best argument. Okay. I'm sorry, Your Honor. I think that what this court has done with respect to interest is that it doesn't have to analyze each individual interest one by one. And that's what this court has done in solid waste agency. And it makes sense because each individual political party and private nonprofit organization always has more specific interests and more narrow interests in the state in the case. And if that was enough to overcome the presumption of adequacy, then essentially the element of the rule would be automatically satisfied. And with respect to the permissive intervention, I just want to make real quick, it is reviewed on abuse of discretion. This court has said that it is a rare bird indeed to overturn that case, to overturn a district court's opinion on abuse of discretion. Here, the district court relied on many factors beyond just an interest in the case. And we would, if there aren't any more questions, we would respectfully submit that the district court appropriately provided the elements in the case and respectfully submit that the court affirm. Thank you. Thank you, counsel. Anything further, Ms. Frost? I will round you up from 15 seconds to a minute. Oh. Thank you, Your Honor. I appreciate it. This court's default approach recognizes that litigants may be in the position that the Democratic Party of Illinois found itself in here, where it absolutely had to move to protect its interests as an election was coming right around the corner. In that situation, it moved well before the state board, so it was impossible to say at that time if there were going to be differences. But almost immediately, those differences have appeared and they were evident. The possibility of them was evident from the face. The only thing I would say on the permissive intervention issue is that it's a rare bird, but it happens, and that this case is like Flying J. It's like the city of Chicago versus FEMA. There simply was no basis for the district court's conclusion that the Democratic Party of Illinois would delay this action. In fact, barely anything has happened in almost a year since it was filed. Thank you very much. We ask that you reverse. The case will be taken under advisement. Thank you, counsel.